UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 5:15-CR-72-KKC-REW |
| | ) | No. 5:17-CV-215-KKC-REW |
| v. | ) | |
| | ) | |
| GILL DEWAYNE GARRETT, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Movant, Gill Dewayne Garrett, is a federal inmate. DE #136 (Motion), at 1. On May 9, 2017,[1] Garrett filed a *pro se*[2] motion under 28 U.S.C. § 2255. *See generally id.* The United States responded in opposition. DE #147 (Response). Although Garrett had the opportunity to reply, DE #138 (Order setting briefing schedule), he did not do so. On the United States's motion, the Court found that, as to communications necessary to litigate the claims of ineffective assistance, Garrett waived attorney-client privilege. DE #146 (Order). The matter is ripe for consideration. Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief (DE #136) and issue **NO** Certificate of Appealability.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Here, Garrett affirmed under penalty of perjury that he executed and mailed the motion, per prison mail, on May 9, 2017. DE #136, at 14.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

1

I. **BACKGROUND INFORMATION**

On November 5, 2015, a grand jury returned a second superseding indictment, charging Garrett with (1) conspiring to distribute mixtures containing fentanyl, cocaine, crack, and heroin, and (2) distributing a mixture containing fentanyl, the use of which resulted in the death of Jolene Berger-Bowman, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. DE #46. Garrett pleaded guilty to both Counts, pursuant to a plea agreement, on April 13, 2016. DE ##91 (Rearraignment Minute Entry); 92 (Plea Agreement); 93 (Sealed Supplement). Chief Judge Caldwell sentenced Garrett on September 29, 2016. DE #117 (Sentencing Minute Entry). Movant received a total prison sentence of 240 months followed by 3 years of supervised release. DE #121 (Judgment). Garrett did not appeal. On May 9, 2017, he timely submitted a § 2255 motion to vacate. DE #136. The Government responded. DE #147. Garrett did not reply. The motion stands ripe for review. The Court rejects both of Movant's claims and recommends dismissal. No basis exists for a Certificate of Appealability.

II. **STANDARD OF REVIEW**

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A

defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

**III.   ANALYSIS**

In his § 2255 motion, Garrett requests relief based on one direct challenge to the validity of his conviction and one allegation of ineffective assistance of counsel. Both theories fail, on this record, under 28 U.S.C. § 2255.

    A.    *Conviction Challenge*

First, Garrett contends, presenting utterly no proof, that the "drug [he] distributed" was "not [an] independently sufficient cause of the victim's death or serious bodily injury." DE #136, at 4. Defendant argues he "cannot be liable . . . unless such use is a but-for cause of the death or injury." *Id.* at 4-5. The United States responded. DE #147, at 2-4.

3

The Court first considers Garrett's collateral attack waiver. The United States raised the issue. DE #147, at 2-3. In the plea agreement, Garrett waived "the right to attack collaterally the guilty plea, conviction, and sentence" except for "claims of ineffective assistance of counsel." DE #92, at ¶ 9. At least other than "where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel[,]" "a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d at 422 (enforcing appeal waiver). Here, Garrett acknowledged by executing the agreement that he had reviewed the full document with counsel and understood its terms. DE #92, at ¶ 15. At rearraignment, Garrett, under oath, confirmed as much to the Court. DE #144, at 9-16. Judge Caldwell further specifically reviewed the contents of the collateral attack waiver at rearraignment. *Id.* at 15. The record shows that Garrett's responses were voluntary and verified, and the Court determined at the hearing that Garrett was competent. *Id.* at 17. Solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977). Considering the representations that Defendant made in the plea agreement and during rearraignment, and the significance of his sworn in-court statements, the Court can only conclude that Garrett made an "informed and voluntary" waiver. *In re Acosta*, 480 F.3d at 422. Accordingly, he remains bound by it, and the waiver bars consideration of this non-ineffective assistance claim, which really is one attacking proof of guilt on Count 2.

Alternatively, the Court considers, in assessing this claim, the procedural default doctrine. "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot

4

use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). The procedural default doctrine bars "claims that could have been raised on direct appeal, but were not[.]" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528. Cause sufficient to excuse default ordinarily consists of "some objective factor external to the defense" that prevented Defendant from raising the issue on direct appeal, "not . . . whether counsel erred[.]" *Murray v. Carrier*, 106 S. Ct. 2639, 2645 (1986). The Court may raise this doctrine *sua sponte*. *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Garrett plainly defaulted this argument by not raising it on direct appeal. He did not address either *Regalado* prong, and the Court sees no basis to conclude either is satisfied in these circumstances, particularly where Garrett tenders no proof of any kind. Accordingly, Garrett procedurally defaulted this argument, an independent basis to dismiss it.

Alternatively to both bases, and because Garrett does include a somewhat connected IAC claim below, the Court considers the merits. The United States concedes that, for a charge of this type, it "must prove that the defendant knowingly and intentionally distributed a controlled substance whose use was the 'but for' cause of death for the victim." DE #147, at 3-4; *see also* DE #92, at ¶ 2b(c). Fatal to Movant's claim, though, are his unequivocal admissions: Garrett sold a Mexican 30, which he believed to contain heroin and/or fentanyl, to Berger-Bowman, who ingested it and fatally overdosed,

5

and that toxicologists examined a blood sample from Berger-Bowman and opined that she "would not have fatally overdosed 'but for' the presence of fentanyl." *Id.* at ¶ 3(a)-(e). Garrett solemnly confirmed, under oath, to Judge Caldwell at rearraignment that he "carefully looked at the entire content" of ¶ 3 and that it "accurately describe[d]" his conduct. DE #144, at 12-13. Sworn, he fully "admit[ted] the conduct attributed to [him] in paragraph 3[.]" *Id.* at 13. Garrett does nothing to overcome these prior solemn declarations, under oath in open court, *Blackledge*, 97 S. Ct. at 1629, and the Court thus alternatively rejects this claim on the merits. Garrett's confessed conduct, as detailed in the plea agreement, confirmed on the record, and buttressed by the acknowledged lab evidence, directly refutes the predicate of his Count 2 attack.[3]

### B.     Ineffective Assistance of Counsel

Second, Garrett makes an ineffective assistance of counsel argument, which has numerous, broadly stated sub-claims. When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the

---

[3] Garrett's "mixed-drug" argument is without foundation; the record shows fentanyl as the lone drug involved, a fact Garrett admitted in the plea agreement. DE #92, at ¶ 3(d)-(e).

6

circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).[4]

Garrett generally argues that his attorney, Hon. Jeffrey A. Darling, "failed to provide [him] with vital facts of [his] case" and "had very limited or if any communication." DE #136, at 6-7 (all as in original). Garrett claims Darling didn't provide him with the actual discovery ("just a verbal description of it") but did give him certain sentencing-related advice. *Id.* "Knowing now the facts," Garrett baldly asserts, his "plea would have been anything other than guilty." *Id.* at 7. The United States responded, DE #147, at 4-7, and tendered a Darling affidavit, DE #147-1.

The record clearly belies each of Defendant's cursory, factless assertions. Most obviously, at rearraignment, under oath, Garrett affirmed *plenteous* communications with

---

[4] *Lafler* was a § 2254 case, but the analysis also applies to a § 2255 *Strickland* theory. *See Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other.").

7

Darling. Specifically, Garrett confirmed that (1) "[w]ith Mr. Darling's help," he was "able to read and understand all of the legal documents" in the case, DE #144, at 5; (2) Mr. Darling "discussed" and "explained" the plea agreement with him, *id.* at 9; (3) he and Mr. Darling "talked about the federal sentencing guidelines," *id.* at 14; and (4) that (again) Darling fully "explained" the plea agreement to him, *id.* at 16. Further, Mr. Darling himself stated in court—with no protestation from Garrett—that he and Defendant "met many times over the last few months." *Id.* at 6. Additionally, at sentencing, Darling confirmed that he and Garrett had "received and reviewed the presentence report." DE #143, at 3. Mr. Darling's sentencing argument reflected a lawyer well-familiar with his client via a long-term (nearly yearlong) relationship:

> Your Honor, I have been representing Dewayne for almost a year now, and for somebody who on paper looks this bad, I found him – I've represented a lot of people, stood before you with a lot of people. He is as personable, engaging, well spoken, intelligent as anyone I have ever represented. And I think that certainly doesn't come through on paper.

*Id.* at 6; *see also* DE #116 (Sentencing Memo.). Mr. Darling's affidavit specifies what the record already generally suggests—that he had "no less than seven meetings" with Defendant and "several meetings" with his parents. DE #147-1, at ¶ 4. There is no merit, under either *Strickland* prong, to Garrett's factless assertions of blanket non-communication.

As to Garrett's discovery-related allegation, Darling confirmed, under oath via affidavit, that Defendant's suggestion is "patently false." *Id.* at ¶ 5. Darling swore that he "made a paper copy of all written discovery for Garrett, and provided it to him at the Woodford County Jail." *Id.* Counsel said he "met with Garrett to review the discovery in detail, and to allow him to listen to audio recordings of his interview and jail phone

8

calls." *Id.* Per Darling, "Garrett was fully aware [of] and had the opportunity to review all evidence against him." *Id.* Regardless of any factual dispute, though, on the prejudice prong (which Defendant fails to address in any way), Garrett fails to connect meaningfully an alleged lack of paper discovery (when he admits he, at least, got "a verbal description of it") to his decision to plead guilty. *See, e.g.*, *United States v. Walton*, No. 5:10-CR-78-JMH-EBA, 2014 WL 2004472, at *10-*11 (E.D. Ky. May 15, 2014) (rejecting a failure to provide discovery *Strickland* claim). Garrett "does not indicate when he requested the discovery, how often he requested it, what the discovery materials contain, or why they would have influenced his decision to plead guilty." *United States v. Stewart*, No. 08-124-ART, 2011 WL 382206, at *3 (E.D. Ky. Jan. 4, 2011), *adopted in* 2011 WL 381951 (E.D. Ky. Feb. 2, 2011).[5] Defendant's self-serving statements on this

---

[5] As to some of his comments on DE #136, at 7, Garrett was fully aware, pre-plea, of the essential elements of each offense. DE #92, at ¶¶ 2a-2b. Further, as to the broader point, the *Stewart* Court helpfully expounded:

> The Court can find no authority suggesting that an attorney renders constitutionally ineffective assistance by failing to share discovery materials with the defendant. As a general matter, there is no constitutional duty for an attorney to share discovery documents with the defendant. *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998). Although [Movant] did have the right to meaningfully participate in making decisions fundamental to his defense, he has failed to show that actual access to discovery documents was fundamental to his decision to plead guilty. *See White v. Cason*, No 04–CV–75071, 2006 WL 763194, at *11 (E.D. Mich. Mar. 24, 2006). While there might be a scenario where an attorney's failure to provide discovery documents violates his client's Sixth Amendment rights, [Movant]'s allegations do not raise such a claim. Other courts addressing this issue have similarly found that an attorney's failure to share discovery materials with his client does not amount to ineffective assistance of counsel. *See e.g.*, *White*, 2006 WL 763194 at *11; *Gaughan v. United States*, No. 2:02–CV–169, 2006 WL 2798155, at *13 (N.D. Ind. Sept. 28, 2006); *Ramsden v. Warden, Dep't of Corr.*, No. 02–138, 2003 WL 356031, at *10 (D. Me. Feb. 14, 2003).

9

topic lead to no relief under either *Strickland* prong. Thus, Garrett only generically suggests he did not know what he needed to know to properly assess his options. He does not detail any particular facts he now has learned but did not know then. The facts he does reference are covered conclusively in the plea agreement and sworn colloquy before the Chief Judge, and Garrett points to nothing other than case strength / potential punishment as a factor in his plea calculus. As the Supreme Court recently observed: "As a general matter, it makes sense that a defendant who has no realistic defense to a charge supported by sufficient evidence will be unable to carry his burden of showing prejudice from accepting a guilty plea." *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017).

Finally, to the extent Garrett complains that Darling "told [him] that if [he] didn't sign, that [he] would most certainly rec[ei]ve a life sentence," DE #136, at 7, the Court simply sees a lawyer providing full and frank advice to his client.[6] Garrett was indeed facing a potential mandatory life sentence on Count 2. *See* DE ##73 (Notice of Prior Conviction); 92 (Plea Agreement), at ¶ 4. However, due to negotiations between

---

*Stewart*, 2011 WL 382206, at *4 (citations altered). As other courts have noted, Garrett here "cites no authority indicating that counsel had a duty to provide [him] with access to or copies of discovery materials. Every authority the court could locate suggests the opposite." *Gaughan*, 2006 WL 2798155, at *13.

[6] The Court is unsure precisely what Garrett means by the allegation that he was "[c]onvince[d] by [his] legal counsel that the judge could and would go below [the] mandatory minimum." DE #136, at 7. The Court believes Defendant is referring to the mandatory life term he potentially faced, which Mr. Darling did indeed effectively help Garrett avoid. If, though, Garrett is referring to the otherwise-applicable 20-year mandatory minimum, he inarguably fully understood (both pre-plea and pre-sentencing) that such a term applied. DE #92, at ¶ 5; 116 (Sentencing Memo.), at 1 (Garrett asking the Court to impose a 20-year sentence); 142, at 2-3 (Darling stating that Garrett is aware of the 20-year mandatory minimum); 144, at 11, 13-14. Garrett was fully cognizant of the imprisonment term he faced and that the Government, having negotiated away the possibility of mandatory life, would request a 20-year term. *Cf., e.g.*, *United States v. Marshall*, 870 F. Supp. 2d 489, 492 (N.D. Ohio 2012) ("A district court is not authorized to sentence a defendant below the statutory mandatory minimum unless the Government files a substantial assistance motion under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, or a defendant falls within the safety valve of 18 U.S.C. § 3553(f).").

10

Defendant and the Government, *see* DE #147-1, at ¶ 6, and Garrett's cooperation and voluntary choice to plead guilty instead of proceeding to trial, the United States withdrew "the notice of intent to seek an enhanced statutory punishment" and agreed that "Defendant will not be subject to a term of mandatory life imprisonment for Count 2[.]" *Id.* Judge Caldwell confirmed this understanding at sentencing: "Mr. Garrett, you're lucky you're not looking at life. You have benefited greatly from the bargain that you have struck with the United States." DE #143, at 10. Garrett makes no *Strickland* complaint of consequence as to Darling's sentencing-related statements.

### C. Evidentiary Hearing

Garrett does not request an evidentiary hearing. Nevertheless, the Court must hold one unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Garrett's claims do not warrant a hearing; the § 2255 motion filings and record of the case conclusively show, for the reasons stated above, that Garrett's claims fail. There are no contested factual issues that justify a hearing.[7] The record, which needs no further development, forecloses relief.

---

[7] The few arguable factual conflicts do not create need for a hearing. Indeed, Garrett argues that his lawyer did not provide him with "vital facts" and that "knowing now the facts" would yield a different plea. DE #136, at 6-7. Unfortunately, Movant does not identify any "facts" he did not know at the time of plea. Further, and critically, he admitted that he distributed the fentanyl at issue, and that but-for ingestion of fentanyl (the lone substance found in the victim's blood and on related paraphernalia), the victim

11

## IV. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Movant has not made a "substantial showing" as to any claimed denial of rights; his *Strickland* and other claims conclusively fail. Reasonable jurists would not find the Court's determinations debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V. RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #136) and issue **NO** Certificate of Appealability.

\* \* \* \* \*

---

would not have died. The stipulated record forecloses each of Garrett's arguments, irrespective of any minor factual disputes about the number of lawyer meetings and discovery access.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 4th day of August, 2017.

Signed By:
**Robert E. Wier** /s/ REW
United States Magistrate Judge